UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

       Plaintiff,

v.                                                                    Criminal No. 09-254 (JNE/AJB)
                                                                     ORDER

(1)    Manuel Antonio Sotelo,
(2)    Guillermo Perez-Chavez,
(3)    Luis Alfonso Perez-Robles,
(4)    Valerio Luis Hernandez-Quiroz, and
(5)    Juan Roberto Castaneda-Diaz,

       Defendants.

In a Report and Recommendation dated December 21, 2009, the Honorable Arthur J. Boylan, United States Magistrate Judge, recommended that several motions filed by Defendants be denied. The magistrate judge also noted that Guillermo Perez-Chavez's oral motion for disclosure of rough notes was moot. The Court has received objections to the Report and Recommendation from four of the five Defendants: Manuel Antonio Sotelo, Luis Alfonso Perez-Robles, Valerio Luis Hernandez-Quiroz, and Juan Roberto Castaneda-Diaz. The government did not respond to the objections. The Court has conducted a de novo review of the record. *See* D. Minn. LR 72.2(b). Based on that review, the Court accepts the recommended decision.

With regard to the objections made by Sotelo, Perez-Robles, and Hernandez-Quiroz, the Court overrules the objections and adopts the Report and Recommendation without further discussion. The Court overrules Castaneda-Diaz's objection for the reasons set forth below.

Castaneda-Diaz objects to the magistrate judge's conclusion that there was probable cause to arrest him on August 21, 2009. In the absence of probable cause, Castaneda-Diaz

argues that his motion to suppress statements and his motion to suppress evidence obtained as a result of an illegal search and seizure should be granted.

The Report and Recommendation describes in detail the events that resulted in Castaneda-Diaz's arrest.[1]  The Court briefly summarizes those events here.  A confidential informant (CI) made multiple controlled purchases of cocaine from Perez-Chavez.  During those purchases, the CI discussed purchases of larger quantities of cocaine, i.e., a kilogram of cocaine.  Those discussions resulted in a plan for the CI to examine a kilogram of cocaine on August 19, 2009, and to buy the cocaine at a later time.  According to recorded telephone calls, the CI was to first meet Castaneda-Diaz.  Perez-Chavez would then take the CI to another location where the CI could examine the cocaine.

On August 19, 2009, the CI arrived at the designated location.  Perez-Chavez arrived at the location in a Jeep driven by Castaneda-Diaz.  In a separate vehicle, the CI followed Perez-Chavez and Castaneda-Diaz to an apartment.  The CI and Perez-Chavez entered the apartment where they met three other individuals, including Perez-Robles and Hernandez-Quiroz.  The CI was shown a kilogram of cocaine and observed firearms in the apartment.  No transaction took place at that time.  A purchase was scheduled for another time.  In the meantime, Castaneda-Diaz remained outside of the apartment near the Jeep.  A law enforcement officer observed Castaneda-Diaz looking around and concluded that Castaneda-Diaz was engaged in countersurveillance.  The CI and Perez-Chavez left the apartment after five to ten minutes.  Castaneda-Diaz and Perez-Chavez left in the Jeep.  The CI left in the other vehicle.

---

[1]     The magistrate judge found that Castaneda-Diaz had been present at drug transactions before August 19, 2009, as a driver for Perez-Chavez.  Although no objection was made to that finding, the Court does not perceive the basis for that finding in the portion of the record submitted in support of the objections.

On the morning of August 20, 2009, law enforcement officers executed a search warrant on the apartment where the CI was shown the kilogram of cocaine. Law enforcement officers seized cocaine, marijuana, heroin, methamphetamine, and a firearm.

The next day, Perez-Chavez contacted the CI, reported that there had been trouble at the apartment, and indicated that the cocaine sale could still take place if the CI remained interested. Pursuant to direction from a law enforcement officer, the CI continued the negotiations. In recorded telephone calls, the CI and Perez-Chavez finalized the deal and agreed to meet in St. Paul. Perez-Chavez arrived at the designated location in a Jeep driven by Castaneda-Diaz. Law enforcement officers took Perez-Chavez and Castaneda-Diaz into custody upon their arrival, placed them in separate squad cars, and moved them to a parking lot across the street. Perez-Chavez and Castaneda-Diaz were advised of their *Miranda* rights. A law enforcement officer first interviewed Perez-Chavez, who implicated Castaneda-Diaz in the cocaine sale. The law enforcement officer then interviewed Castaneda-Diaz, who made incriminating statements.

Based on these events, Castaneda-Diaz asserts that there was no probable cause to arrest him. "A warrantless arrest of an individual in a public place for a felony, or a misdemeanor committed in the officer's presence, is consistent with the Fourth Amendment if the arrest is supported by probable cause." *Maryland v. Pringle*, 540 U.S. 366, 370 (2003). In *Pringle*, the Supreme Court offered the following explanation of the probable-cause standard:

> The long-prevailing standard of probable cause protects "citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime," while giving "fair leeway for enforcing the law in the community's protection." On many occasions, we have reiterated that the probable-cause standard is a "'practical, nontechnical conception'" that deals with "'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules."

3

> The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances.  We have stated, however, that "[t]he substance of all the definitions of probable cause is a reasonable ground for belief of guilt," and that the belief of guilt must be particularized with respect to the person to be searched or seized. . . .
>
> To determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide "whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to" probable cause.

540 U.S. at 370-71 (alterations in original) (citations omitted); *see United States v. Chauncey*, 420 F.3d 864, 870 (8th Cir. 2005).

Castaneda-Diaz relies heavily on *United States v. Everroad*, 704 F.2d 403 (8th Cir. 1983), and *Ybarra v. Illinois*, 444 U.S. 85 (1979), to argue that his mere presence with Perez-Chavez does not establish probable cause.  In *Everroad*, the district court concluded that officers had probable cause to arrest the defendant, and the Eighth Circuit reversed.  704 F.2d at 407. The court of appeals summarized the evidence that supported the district court's finding of probable cause as follows:

> First, the agents observed [the defendant] accompanying Bragg, whom the agents knew was then involved in a drug transaction, to areas where the deal was being arranged.  Second, under Bragg's plan, Agent Carter would receive the cocaine within a half hour after he received the marijuana; and the agents knew that [the defendant's] motel was located within the one-half hour radius of the place where Bragg delivered the marijuana.

*Id.* at 406.  The court of appeals concluded that this evidence did not establish probable cause to arrest the defendant:

> With regard to the first fact, it is settled that mere association with a known or suspected criminal, or mere presence in that person's automobile, does not create probable cause to arrest.  Nor is probable cause established by the presence of a person in a location known to be frequently involved in narcotics sales or other crimes.
>
> The second fact in support of the district court's probable cause finding, the location of [the defendant's] motel near the scene of Bragg's arrest, is equally

4

unavailing.  Surely such physical proximity to a crime combined simply with a brief association with a suspected criminal—when there is no other unlawful or suspicious conduct by any party involved—cannot support a finding of probable cause.  Moreover, it is clear that law enforcement would not have been unduly hampered here if the agents had waited to obtain more facts before seeking to arrest [the defendant].

*Id.* at 406-07 (citations omitted).

The Eighth Circuit has repeatedly distinguished *Everroad* in cases where the association between an individual and another engaged in suspected criminal activity took place at the time of the criminal activity.  *See United States v. Caves*, 890 F.2d 87, 95 (8th Cir. 1989); *United States v. Vravis*, 761 F.2d 513, 515-16 (8th Cir. 1985); *United States v. Clark*, 754 F.2d 789, 791 (8th Cir. 1985).  Here, Castaneda-Diaz drove Perez-Chavez on August 19 to the apartment where the CI was shown a kilogram of cocaine, and Castaneda-Diaz drove Perez-Chavez to meet the CI on August 21 when Perez-Chavez planned to sell a kilogram of cocaine.  Under these circumstances, the Court does not find Castaneda-Diaz's reliance on *Everroad* persuasive.

In *Ybarra*, police officers obtained a warrant to search a tavern and its bartender for evidence of possession of a controlled substance.  444 U.S. at 87-88.  Upon entering the tavern, an officer searched approximately ten patrons, including Ybarra, while other officers searched the premises.  *Id.* at 88.  Inside a cigarette pack found in a pocket of Ybarra's pants, the officer found six tinfoil packets that contained heroin.  *Id.* at 88-89.  The Supreme Court concluded that there was no probable cause to search Ybarra:

It is true that the police possessed a warrant based on probable cause to search the tavern in which Ybarra happened to be at the time the warrant was executed.  But, a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person.  Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person.  This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another or to search the premises where the person may happen to be.  The Fourth and

Fourteenth Amendments protect the "legitimate expectations of privacy" of persons, not places.

Each patron who walked into the Aurora Tap Tavern on March 1, 1976, was clothed with constitutional protection against an unreasonable search or an unreasonable seizure. That individualized protection was separate and distinct from the Fourth and Fourteenth Amendment protection possessed by the proprietor of the tavern or by [the bartender] "Greg." Although the search warrant, issued upon probable cause, gave the officers authority to search the premises and to search "Greg," it gave them no authority whatever to invade the constitutional protections possessed individually by the tavern's customers.

*Id.* at 91-92 (citations and footnote omitted).

The Supreme Court later distinguished *Ybarra* in *Pringle*. In *Pringle*, a police officer stopped a car occupied by three individuals for speeding shortly after 3 a.m. 540 U.S. at 367-68. After receiving consent to search the car, the officer found $763 in cash in the glove compartment and five plastic glassine baggies that contained cocaine behind the backseat armrest. *Id.* at 368. None of the individuals offered any information regarding the ownership of the money or cocaine. *Id.* at 368-69. The officer arrested the three individuals. *Id.* at 369. Later, Pringle, one of the three individuals, acknowledged that the cocaine belonged to him. *Id.* Concluding that there was probable cause to arrest Pringle, a state trial court denied his motion to suppress the cocaine. *Id.* The Court of Appeals of Maryland reversed, concluding that probable cause did not exist to arrest Pringle. *Id.* Holding that there was probable cause for the arrest, the Supreme Court reversed. *Id.* Rejecting Pringle's characterization of his case as one of guilt-by-association, the Supreme Court distinguished *Ybarra*:

This case is quite different from *Ybarra*. Pringle and his two companions were in a relatively small automobile, not a public tavern. In *Wyoming v. Houghton*, 526 U.S. 295, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999), we noted that "a car passenger—unlike the unwitting tavern patron in *Ybarra*—will often be engaged in a common enterprise with the driver, and have the same interest in concealing the fruits or the evidence of their wrongdoing." Here we think it was reasonable for the officer to infer a common enterprise among the three men. The quantity of drugs and cash in the car indicated the likelihood of drug dealing, an

enterprise to which a dealer would be unlikely to admit an innocent person with
the potential to furnish evidence against him.

*Pringle*, 540 U.S. at 373; *see also United States v. Delossantos*, 536 F.3d 155, 159-60 (2d Cir.),

*cert. denied*, 129 S. Ct. 649 (2008); *United States v. Chauncey*, 420 F.3d 864, 870-71 (8th Cir.

2005).

Like the events considered in *Pringle*, the events that resulted in Castaneda-Diaz's arrest

are quite different from those addressed in *Ybarra*. As noted above, the CI made several

controlled purchases of cocaine from Perez-Chavez. As part of the sale of a larger quantity of

cocaine, arrangements were made for the CI to examine the cocaine. The CI was to first meet

Castaneda-Diaz, and Perez-Chavez would then take the CI to the cocaine. On August 19, 2009,

Castaneda-Diaz drove Perez-Chavez to meet the CI; drove Perez-Chavez, followed by the CI, to

an apartment where the CI was shown a kilogram of cocaine; acted as a lookout[2] while Perez-

Chavez, the CI, and others were in the apartment; drove away from the apartment with Perez-

Chavez; and drove Perez-Chavez to the meeting on August 21 when Perez-Chavez planned to

sell a kilogram of cocaine. The Court concludes that there was probable cause to arrest

Castaneda-Diaz on August 21. The Court therefore overrules his objection.

Based on the files, records, and proceedings herein, and for the reasons stated above, IT

IS ORDERED THAT:

1.    Castaneda-Diaz's objection to the Report and Recommendation [Docket
      No. 149] is OVERRULED.

---

[2]    Although "[t]he observation that an individual is conducting counter-surveillance can
easily result from a misinterpretation of an individual's behavior," *United States v. Green*, 52
F.3d 194, 198 (8th Cir. 1995), "the police possess specialized law enforcement experience and
thus may 'draw reasonable inferences of criminal activity from circumstances which the general
public may find innocuous,'" *United States v. Mendoza*, 421 F.3d 663, 667 (8th Cir. 2005)
(quoting *Caves*, 890 F.2d at 94). At the hearing before the magistrate judge, a law enforcement
officer testified that "[i]t is extremely common for narcotics traffickers to conduct
countersurveillance."

2.    Hernandez-Quiroz's objection to the Report and Recommendation [Docket No. 150] is OVERRULED.

3.    Perez-Robles's objection to the Report and Recommendation [Docket No. 151] is OVERRULED.

4.    Sotelo's objection to the Report and Recommendation [Docket No. 153] is OVERRULED.

5.    Perez-Chavez's Motion for Severance of Counts and Defendants [Docket No. 28] is DENIED.

6.    Perez-Chavez's Motion to Suppress Confessions or Statements in the Nature of Confessions [Docket No. 33] is DENIED.

7.    Perez-Chavez's Motion to Suppress any Evidence Obtained through Search and Seizure [Docket No. 35] is DENIED.

8.    Perez-Chavez's Motion for Severance of Counts and Defendants [Docket No. 54] is DENIED.

9.    Hernandez-Quiroz's Motion for Severance of Counts [Docket No. 42] is DENIED.

10.    Hernandez-Quiroz's Motion for Severance of Defendants [Docket No. 43] is DENIED.

11.    Hernandez-Quiroz's Motion for Suppression of Evidence Obtained as a Result of Search and Seizure [Docket No. 44] is DENIED.

12.    Hernandez-Quiroz's Motion to Suppress Statements, Admissions, and Answers of Defendant [Docket No. 48] is DENIED.  His *Miranda* interview statements are not directly challenged and were not the fruit of unlawful police action.

13.    Hernandez-Quiroz's Motion to Suppress Out-of-Court Identification [Docket No. 105] is DENIED.

14.    Castaneda-Diaz's Motion for Severance of Counts and Defendants [Docket No. 58] is DENIED.

15.    Castaneda-Diaz's Motion for Suppression of Evidence Obtained as a Result of Search and Seizure [Docket No. 59] is DENIED.

16.    Castaneda-Diaz's Motion to Suppress Statements, Admissions, and Answers of Defendant [Docket No. 64] is DENIED.  His *Miranda* statements are not directly contested and were not the fruit of an unlawful arrest.

17.     Sotelo's Motion to Dismiss-Loss of Witnesses [Docket No. 74] is DENIED.

18.     Sotelo's Motion for Severance of Counts and Defendants [Docket No. 75] is DENIED.

19.     Sotelo's Motion to Suppress-Search and Seizure [Docket No. 78] is DENIED.

20.     Sotelo's Motion for Severance of Defendants [Docket No. 96] is DENIED.

21.     Perez-Robles's Motion for Suppression of Statements [Docket No. 83] is DENIED.  His statements were not the fruit of an unlawful arrest or police action.

22.     Perez-Robles's Motion for Suppression of all Evidence Obtained pursuant to the Execution of a Search Warrant [Docket No. 88] is DENIED.

23.     Perez-Robles's Motion for Severance of Counts and Defendants [Docket No. 89] is DENIED.

24.     Perez-Robles's Motion for Suppression of Evidence Obtained as a Result of Illegal Arrest and Seizure [Docket No. 90] is DENIED.

25.     Perez-Robles's Motion for Severance of Defendants [Docket No. 93] is DENIED.

26.     Perez-Robles's Motion to Suppress Out-of-Court Identification [Docket No. 103] is DENIED.

27.     Perez-Chavez's oral motion for disclosure of rough notes is moot.

Dated:  February 18, 2010

s/  Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge